499 S.E.2d 229

**Ex Parte Contius BLACK, Appellant.**

**In Re Stephen SIZEMORE and Paula Sizemore, Respondents,**
**v.**
**BETHANY CHRISTIAN SERVICES, Mark Walker,**
**and Martha Jane Dubose, Defendants.**

No. 2819.

Court of Appeals of South Carolina.

Heard March 5, 1998.

Decided March 30, 1998.

Rehearing Denied May 21, 1998.

Bruce A. Byrholdt and W. Patrick Yon, both of Chapman & Byrholdt, Anderson, for appellant.

Robert D. Moseley, Jr., of Leatherwood, Walker, Todd & Mann, for respondents.

Marilyn Moorer Pauling, Greenville, guardian ad litem.

GOOLSBY, Judge:

Contius Black appeals the decision of the family court to allow Stephen and Paula Sizemore to adopt his biological daughter. We affirm.

In 1994, from approximately August through mid-December, Martha Jane Dubose, the child's biological mother, engaged in frequent casual sex with both Black and Mark Walker. Black and Dubose lived eight miles apart and were students at Abbeville High School. They both lived with their parents. Walker was older and did not attend school.

Black transferred to Greenwood High School in October 1994; however, he and Dubose continued their relationship until December 1994. During the course of their relationship, Dubose became pregnant. Although her classmates and others at school gossiped about her advancing pregnancy, she acknowledged living in a state of denial about her condition for several months. She did not confirm her condition until late January 1995, when, upon the advice of a friend, she took a

home pregnancy test. Although the record is not clear as to the date of conception, Dubose testified she was told she was five-and-a-half months pregnant when she had an ultrasound.

Dubose testified she called Black at his parents' home when she learned she was pregnant, only to be told he had moved and his whereabouts were unknown. She also tried unsuccessfully to contact him in person at his grandmother's house. Evidently, however, the information Dubose received from Black's family was false. Although Black did transfer to another high school, he still lived at home with his parents. Black never tried to contact Dubose after they terminated their involvement.

Dubose then contacted Bethany Christian Services in February 1995 and executed the necessary documents to place her unborn child for adoption. On the documents Dubose listed only Walker as the father.

Dubose delivered a baby girl on June 20, 1995. Bethany Christian Services took possession of the child on June 22, 1995, and soon after placed her with the Sizemores, who intended to adopt her.

Black admitted he heard from his cousin in October or November of 1995 that Dubose might be pregnant, but did not make further inquiries at the time. It was not until December 1995 that Black, after a chance meeting with Dubose, learned he was the biological father of the child and the child had been placed for adoption. After receiving this information from Dubose, Black informed his new wife of this development.

In January 1996, Black's wife, a former caseworker for the Greenwood Department of Social Services, began contacting Bethany Christian Services about the matter. The Sizemores, who had filed an action on November 7, 1995, to adopt the child, amended their complaint in February 1996, adding Black as a party-defendant to the action and requesting termination of his parental rights. In response, Black moved for paternity testing and sought to add Dubose as a party. The family court granted both of Black's requests. The paternity test results, which were dated July 2, 1996, showed a 99.99 per cent probability that Black was the biological father of Dubose's child.

After a merits hearing on December 5, 1996, the family court determined Black's consent for the adoption of the child

was not necessary because of his "failure to timely demonstrate a willingness to develop a custodial relationship with this child." Based on this determination, the family court declared the minor child to be the legal child of the Sizemores. Black appeals.

1. Black first argues the State of South Carolina and the family court failed to adequately protect his opportunity to participate as a parent in his daughter's life. We reject this argument. At no time during the family court proceedings did Black ever challenge the constitutionality of the applicable statutory framework. Moreover, although the family court order had a general discussion about the constitutional protection to which unwed fathers are entitled, it made no specific ruling on the constitutionality of the pertinent statutes. Because, therefore, the issue of constitutionality was not preserved for review, we cannot address it on appeal. *See Hendrix v. Eastern. Distribution, Inc.,* 320 S.C. 218, 464 S.E.2d 112 (1995) (vacating an opinion by this court to the extent it addressed an issue that was not preserved for appellate review); *Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991) (where the trial court does not explicitly rule on a question and the appellant fails to move under Rule 59(e), SCRCP, to amend or alter the judgment on that ground, the issue is not properly before the court of appeals and should not be addressed).

2. We find no merit to Black's argument that the family court erred in finding he failed to timely demonstrate a willingness to develop a full custodial relationship with his daughter.

If the biological father of a child was not married to the child's mother at the time the child was born and the child was placed with prospective adoptive parents six months or less after the child's birth, the father's consent or relinquishment for the purpose of adoption is necessary if the father paid a fair and reasonable sum, based on his financial ability, toward either the child's support or expenses incurred in connection with the mother's pregnancy or with the birth of the child. S.C.Code Ann. § 20–7–1690(A)(5)(b) (Supp.1997). An unwed father, however, is entitled to a relationship with his child not only when he meets the literal requirements of this section, "but also when he undertakes sufficient *prompt* and good-faith

efforts to assume parental responsibility *and to comply with the statute.*" *Abernathy v. Baby Boy,* 313 S.C. 27, 32, 437 S.E.2d 25, 29 (1993) (emphasis added).

Because section 20–7–1690(A)(5)(b) explicitly conditions the necessity of a father's acquiescence in an adoption on his payment of support or financial assistance to the birth mother, any steps Black may have taken to assert his parental rights are insufficient to protect his relationship with his child unless accompanied by a prompt, good-faith effort to assume responsibility for either a financial contribution to the child's welfare or assistance in paying for the birth mother's pregnancy or childbirth expenses. Here, the record contains no evidence that Black attempted at any time to help Dubose or Bethany Christian Services with pregnancy or childbirth expenses. Moreover, even assuming Black is correct that he took prompt measures to determine paternity and assert his parental rights after Dubose told him about the child, he admitted he never offered to support the child, even after receiving the results of the paternity test, which were available about five months before the final hearing. Although the family court relied primarily on Black's lack of diligence in making inquiries about Dubose's pregnancy, the record evidence of his failure to offer support for the child as of the date of the final hearing warrants our affirmance of the family court order. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.").[1]

3. Finally, Black argues the family court erred in not making any findings concerning his fitness as a parent. We disagree. Although Black counterclaimed for custody, this action initially involved the Sizemores' request to legally adopt the child. The family court, once it determined Black's consent to the adoption was not required and declared the child to be the legal child of the Sizemores, had no obligation to determine whether or not Black was entitled to custody. *See* S.C.Code Ann. § 20–7–1770(B) (Supp.1997) ("After a final

---

1. Moreover, we believe the record supports the family court's findings that (1) Black initially attempted to evade his parental responsibilities and (2) his later efforts to assume a parental relationship with the child arose at the urging of his wife and only after he realized Dubose had relinquished her parental rights. As noted in the body of this opinion, Dubose testified she tried unsuccessfully to contact Black, only to be

decree of adoption is entered, the biological parents of the adoptee are relieved of all parental responsibilities and have no rights over the adoptee.").

**AFFIRMED.**

HEARN and STILWELL, JJ., concur.

---

told incorrectly by family members with whom he was living at the time that his whereabouts were unknown. Furthermore, Black admitted that at least one month before Dubose told him about the child, he had heard she had delivered a baby; nevertheless, he failed to follow up on that communication. We further uphold the family court's finding of fact that Black's wife initiated the inquiries about the pending adoption, a finding most notably supported by a letter to Bethany Christian Services that, though signed by Black, reveals the active role his wife was taking in this matter.

We are also aware that while this appeal was pending, Black made an unsuccessful motion before this court for visitation with the child, asserting in the motion he had been paying child support. In our view, however, both the request for visitation and the payment of support appear to be, at best, judicially motivated and do not meet the statutory requirement for a prompt assumption of responsibility by the biological father.